UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-21208-CIV-GOLD/GOODMAN

MITSUI SUMITOMO INSURANCE CO.
a/s/o SONY CORPORATION OF AMERICA
and SONY CORPORATION OF LATIN
AMERICA

   Plaintiff,

v.

CARBEL, LLC,

   Defendant.
_____/

## ORDER ON DEFENDANT'S MOTION TO COMPEL

   This matter is before the Court on Defendant, Carbel, LLC's motion to compel Plaintiff, Mitsui Sumitomo Insurance Company, as subrogee of Sony Corporation of America and Sony Corporation of Latin America, to comply with Rule 26(a)(1)(A) of the Federal Rules of Civil Procedure, by producing all mandatory disclosures [DE# 71].  The Court has considered the motion and associated briefing of the parties, and has independently reviewed the withheld documents *in camera*.  For the reasons set forth below, the Court will **deny** the motion.

## BACKGROUND

   This discovery dispute arises out of a subrogation action, filed by Plaintiff on May 5, 2009 [DE# 1].  According to the allegations in the complaint, the underlying litigation is the result of a cargo theft of Sony's property from Defendant Carbel's commercial warehouse.  Plaintiff Mitsui reimbursed Sony pursuant to their insurance contract, and

then subrogated itself to Sony's claims. Mitsui seeks to hold Carbel liable for damages and replacement costs of Sony's goods.

Pursuant to Rule 26(a)(1)(A), a party must, without awaiting a discovery request, provide to the opposing parties certain initial disclosures that are "needed in most cases to prepare for trial or make an informed decision about settlement."

On March 25, 2011, the parties submitted to the Court a proposed joint discovery plan, requiring initial disclosures by April 1, 2011 [DE# 68]. On April 20, 2011, the Court issued an amended order requiring the parties to make the disclosures required by Rule 26(a)(1) by April 1, 2011 [DE# 70]. Defendant filed a motion to compel on May 13, 2011, contending that Plaintiff had failed to produce certain outstanding documents required under Rule 26 [DE# 71]. After a hearing on the motion, and at the Court's instruction, Defendant then filed a supplemental brief, contending that Plaintiff waived its right to claim privilege over the withheld documents.[1] Plaintiff submitted the withheld documents to the Court for *in camera* review, and, in its own supplemental brief, contends that the withheld documents are non-discoverable work product and/or subject to the attorney-client privilege, and that it has *not* waived its right to claim privilege [DE# 76].

By way of additional background, Plaintiff Mitsui and Tokio Marine, a non-party to this suit, **shared** coverage on Sony's insurance policy, which is at issue in this case. Plaintiff Mitsui enlisted a third party administrator, Vericlaim, to adjust the claim. Plaintiff Mitsui provided coverage to Sony for unnamed goods in transit, and AIG

---

[1] Sony bate-stamped documents ## 00460; 00461; 00463; 00470; 00471; 00475; 00535; 00547; 00591; 00611; 00612; 00616; 00629; 00630; 00635; 00636; 00644; 00646; 00647; 00670; 00679; 00680; 00681; 00682; 00711; 00712; 00715; 00716; 00717; 00718; 00719; and 00720 [DE# 75].

provided coverage to Defendant pursuant to a Marine Open Cargo Policy. Consequently, Sony made claims against both Plaintiff Mitsui's and AIG's policies, which created a question regarding the respective coverage among the insurers. Plaintiff Mitsui then filed this action against Defendant for subrogation. Plaintiff claims that the redacted documents "specifically relate to insurance coverage/contribution issues and the impact of 'other insurance' on the claim . . . and the possibility of litigation between AIG and Plaintiff Mitsui for contribution and the authors' mental impressions related to that possibility" [DE# 76, at 3].

## ANALYSIS

### 1. Applicability of Work Product Privilege

Plaintiff asserts that many of the documents submitted for *in camera* review are covered by the work product privilege. Work product protection operates to "remov[e] counsel's fears that his thoughts and information will be invaded by his adversary." *Jordan v. United States Dep't of Justice*, 591 F.2d 753, 775 (D.C. Cir. 1978). The proponent of the privilege has the burden of proving its applicability. *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 976 (7th Cir. 1996).

Fed. R. Civ. P. 26(b)(3) provides specific protection for work product:

(A) Documents and Tangible Things. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, **consultant**, surety, **indemnitor,** insurer, or **agent**) . . .

(B) Protection Against Disclosure. If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning litigation. (emphasis added).

The Court reviewed the withheld documents, and concludes that the documents are entitled to protection under either the work product doctrine, or the attorney-client privilege, or both.[2]  Although not all portions of each document have been prepared by or for Plaintiff in anticipation of *this* litigation -- some documents were prepared with the anticipation of litigation for contribution between Plaintiffs and AIG, Defendant's insurer -- it is widely recognized that the "work product doctrine would be attenuated if it were limited to documents that were prepared [only] in the [very] case for which discovery is sought."  *In re Murphy*, 560 F.2d 326, 334 (8th Cir. 1977); *cf. Duplan Corp. v. Moulinage et Retorderie de Chavanoz*, 487 F.2d 480, 484, n.15 (4th Cir. 1973) (rejecting any requirement that the litigation for which work product was prepared be "closely related" to the litigation actually anticipated).

The Supreme Court has articulated that the purpose of work product protection is to immunize the work product of the attorney *or his agents* from discovery, so that they can analyze and prepare their client's case for litigation.  *See United States v. Nobles*, 422 U.S. 225, 238-39 (1975).  Work product extends beyond the lawyer's own preparation; it may be protected as long as it has been prepared in anticipation of litigation by *any* representative or agent of the party asserting the privilege.  *See, e.g.*, *Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1260-62 (3d Cir. 1993) (holding that work-product protection applied to documents prepared by an environmental consultant).

Therefore, it is immaterial that certain documents have been prepared by parties other than Plaintiff's counsel, because the withheld documents were indeed prepared by Plaintiff or Plaintiff's agents with an eye toward litigation, as contemplated by Rule

---

[2] For purposes of resolving this motion, it is not necessary to enumerate which documents fall under which privilege.

26(b)(3)(A). The contents of communications between Plaintiff Mitsui and its insured, Sony, and the communications between Plaintiff Mitsui and Vericlaim, its third party administrator, are protected because Sony is the insured and the party from whom the subrogation right flows in this case and because Vericlaim is Plaintiff Mitsui's agent, responsible for adjusting the claim at issue. The content of communications between Plaintiff Mitsui and Tokio Marine (two insurers sharing the Sony insurance coverage here) are also privileged because they contain Plaintiff's mental impressions and legal theories prepared in anticipation of litigation. As such, Plaintiff properly asserted the work product privilege over the withheld documents, because they contain the mental impressions and legal theories of Plaintiff and were prepared in anticipation of litigation by Plaintiff and its agents.

### 2. Applicability of Attorney-Client Privilege

Plaintiff contends that a portion of the withheld documents are protected by the attorney-client privilege. The purpose of the attorney-client privilege is "to encourage full and frank communication between attorneys and their clients," and exists "to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Upjohn Co. v. United States*, 449 U.S. 383, 389, 391 (1981).

Defendant does not contest that that there are privileged documents among those that Plaintiff has withheld, (i.e., those strictly concerning communications between Plaintiff Mitsui and its counsel), but Defendant asserts that Plaintiff should be compelled to produce these documents as well because Plaintiff waived the privilege through both subject matter waiver and voluntary disclosure [DE# 75].

### 3. Alleged Waiver of Privileges

The Court has concluded through its *in camera* review of the documents that the documents fall under one or both of two privileges: communications between Plaintiffs and Plaintiff's counsel that are shielded by the attorney-client privilege or communications that contain content reflecting Plaintiff's (or Plaintiff's representatives') mental impressions and legal theories about Plaintiff Mitsui's coverage of the claim at issue, prepared in anticipation of litigation, which are protected as work product. Because Plaintiff has established the applicability of the privileges, the burden now shifts to the Defendant, as the party asserting waiver, to show that the party claiming the privilege has waived its right to do so. *See Rhoads Indus. v. Bldg. Materials Corp. of Am.*, 254 F.R.D. 216, 223 (E.D. Pa. 2008).

Defendant maintains that withholding certain documents while disclosing others allows Plaintiff to improperly "hide behind the privilege" and use it as both a "shield and a sword." *See In re Lott*, 424 F.3d 446, 454 (6th Cir. 2005); *see also United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991). Defendant contends that Plaintiff waived the privilege pursuant to the subject matter waiver, which operates when a party "injects into the case an issue that in fairness requires an examination of otherwise protected communications," and in the event of trial, "the party holding the privilege will be forced to draw upon the privileged material . . . in order to prevail [on the issue]." *Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1422 (11th Cir. 1994); *In re Lott*, 424 F.3d at 453. Defendant further contends that as a result of "[letting the cat] out of the bag," the waiver extends "to all such communications regarding the same subject

matter." *In re von Bulow*, 828 F.2d 94, 103 (2d Cir. 1987); *In re EchoStar Commc'ns. Corp.*, 448 F.3d 1294, 1301 (Fed. Cir. 2006).

Subject matter waiver through issue injection applies only when the disclosing party attempts "to prove a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney client communication." *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir. 1994) (citing *North River Ins. Co. v. Philadelphia Reinsurance Corp.*, 797 F. Supp. 363, 370 (D.N.J. 1992)). As such, courts have found waiver by implication in scenarios where a client (1) testifies concerning portions of the attorney-client communication, (2) places the attorney-client relationship directly at issue, (i.e., in a malpractice suit,) or (3) asserts reliance on an attorney's advice as an element of the claim or defense. *In re Keeper of the Records*, 348 F.3d 16, 24 (1st Cir. 2003) (citing *Sedco Int'l, S. A. v. Cory*, 683 F.2d 1201, 1206 (8th Cir. 1982)).

Here, although Plaintiff has disclosed certain documents to Defendant in the course of discovery, these disclosures do not amount to issue injection. Defendant has not demonstrated that Plaintiff injected any issue into its claims for subrogation or defense regarding contribution that would require Plaintiff to prove such claims or defenses by relying on the contents of the privileged communications. Defendant has also failed to show that Plaintiff intends to do so at some later juncture in this action. Accordingly, the Court finds no subject matter waiver through issue injection.

Defendant also contends that Plaintiff waived the privilege by voluntarily disclosing communications between persons from separate entities. It is well-established that once a party asserting privilege makes disclosures of privileged information to third parties, the communications are no longer confidential. *See United States v. Suarez*, 820

F.2d 1158, 1160 (11th Cir. 1987) (justification for privilege ceases once disclosed to third parties).  Although disclosure of confidential communications to third parties vitiates the attorney-client privilege, work product protection is analyzed differently due to the policies that give rise to the protection.  In the context of work product, the question is not, as in the case of the attorney-client privilege, *whether* confidential communications were disclosed, but *to whom* the disclosure is made -- because the protection is designed to protect an attorney's mental processes from discovery by *adverse* parties.  *See generally Jordan*, 591 F.2d at 775.

Under the "common interest" exception to waiver, a party may share its work product with another party without waiving the right to assert the privilege when the parties have a shared interest in actual or potential litigation against a common adversary, and the nature of their common interest is legal, and not solely commercial.  *See Net2Phone, Inc. v. eBay, Inc.,* No. 06-2469, 2008 U.S. Dist. LEXIS 50451, at *23 (D.N.J. June 25, 2008) (citing *Thompson v. Glenmede Trust Co.*, Civ. No. 92-5233, 1995 U.S. Dist. LEXIS 18780, at *15 (E.D. Pa. Dec. 18, 1995); *Duplan Corp. v. Deering Milliken, Inc.*, 397 F. Supp. 1146, 1172 (D.S.C. 1974)); *see also Weber v. FujiFilm Med. Sys. U.S.A.,* No. 3:10cv401, 2011 U.S. Dist. LEXIS 6199, at *5 (D. Conn. Jan. 21, 2011); *Gulf Islands Leasing, Inc. v. Bombardier Capital, Inc.*, 215 F.R.D. 466, 474 (S.D.N.Y. 2003); *Medinol v. Boston Sci. Corp*., 214 F.R.D. 113, 115 (S.D.N.Y. 2002).  Courts differ on the degree of commonality required to satisfy the common interest exception.  *Compare Hoffmann La Roche, Inc. v. Roxane Labs., Inc.*, No. 09-6335, 2011 U.S. Dist. LEXIS 50404, at *15 (D.N.J. May 11, 2011) (substantially similar legal interests sufficient) *with Duplan*, 397 F. Supp. at 1172 (identical interests required).

8

Additionally, the common interest exception to waiver also applies to the disclosure of privileged communications shared between a parent corporation and a subsidiary, where the parent and subsidiary companies share a legal interest. *See In re Grand Jury Subpoena # 06-1*, 274 Fed. Appx. 306, 311 (4th Cir. 2008) (adopting the Third Circuit's holding that privileged communications are subject to the common interest exception when the parties' interests are "identical (or nearly so) in order that an attorney can represent them all with the candor, vigor, and loyalty that our ethics require") (quoting *In re Teleglobe Communs. Corp.*, 493 F.3d 345, 366 (3d Cir. 2007)).

Although Plaintiff shared some of its work product with various non-parties to the litigation, it appears that Plaintiff did not waive the privilege under the common interest exception to waiver. Plaintiff shares legal interests with the parties to whom it made disclosures of privileged communications. With regard to Plaintiff's disclosures to its co-insurer, Tokio Marine, the company shared half of Sony's insurance policy, and was required to indemnify Sony for the stolen goods. As such, Tokio Marine had an identical (or almost identical) legal interest to Plaintiff Mitsui, as a potential co-party to litigation against Defendant for subrogation (i.e., a party who could be liable to the same extent as Plaintiff). Similarly, various Sony entities were also potential co-parties to the litigation, and shared legal interests with their parent companies, Sony Corporation of America and Sony of Latin America.

Finally, Defendant argues that the privilege should be deemed waived because Plaintiff did not timely file a privilege log. In response, Plaintiff correctly notes that no federal rule requires production of a privilege log (much less filing it with the court) or

9

mandating waiver as the sanction for non-production or untimely production of a log.[3] *See Bankers Sec. Ins. Co. v. Symons*, 889 So. 2d 93, 95 (Fla. 5th DCA 2004) ("no federal rule requires production of the log along with the response or dictates waiver as a sanction"). Courts have observed that a "privilege log is a 'means to an end and not an end in itself; the ultimate question is whether the documents are protected by the privilege.'" *Id.* (quoting *Boca Investerings Pshp. v. United States*, No. 97-602, 1998 U.S. Dist. LEXIS 11840 (D.D.C. Jan. 20, 1998

Courts in this Circuit have generally followed the Ninth Circuit's approach to waiver articulated in *Burlington Northern & Santa Fe Ry. v. United States Dist. Court*, 408 F.3d 1142, 1149 (9th Cir. 2005), which adopted a "holistic reasonableness analysis, intended to forestall needless waste of time and resources, as well as tactical manipulation of the rules and the discovery process." "The Ninth Circuit rejected a per se rule that the failure to produce a privilege log within Rule 34's 30-day time limit results in waiver of the privilege." *Universal City Dev. Ptnrs, Ltd. v. Ride & Show Eng'g, Inc.*, 230 F.R.D. 688, 695 (M.D. Fla. 2005). "Instead, the Ninth Circuit enumerated several factors that should be applied 'in the context of a holistic reasonableness analysis,' and there should not be a mechanistic determination of whether information is provided in a particular format." *Id*. The relevant factors, according to the Ninth Circuit, are:

> the degree to which the objection or assertion of privilege enables the litigant seeking discovery and the court to evaluate whether each of the withheld documents is privileged . . . the timeliness of the objection and accompanying information about the withheld documents (where service

---

[3] Local Rule 26.1(g), however, does require production of a privilege log but does not set a timetable for its production or specify sanctions for tardy production.

within 30 days, as a default guideline, is sufficient); the magnitude of the document production; and other particular circumstances of the litigation that make responding to discovery unusually easy . . . or unusually hard.

*Burlington Northern & Santa Fe Ry.*, 408 F.3d at 1149.

In this case, Judge Gold issued an amended scheduling order that required initial disclosures to be made by April 1, 2011 (D.E. 70) based on a proposed joint discovery plan agreed to by Defendant Carbel (D.E. 68). Plaintiff then produced a privilege log on May 20, 2011, which Defendant refers to as a "draft privilege log" and argues that the log is insufficiently detailed under Local Rule 26.1(g)(3). The privilege log accurately identifies the withheld documents. Although the log does not list the authors of the claim log notes, that information was provided to Defendant through the redacted production. Defendant was not prejudiced by any informational deficiency because of the Court's *in camera* review confirming the privileged nature of these documents. Additionally, while the May 20, 2011 production was 20 days over the Ninth Circuit's 30-day guideline, it would be an unduly harsh sanction to deem waived inarguably privileged documents in this instance absent a showing of bad faith or intentional dilatoriness. *Compare Pensacola Firefighters' Relief Pension Fund Bd. of Trs. v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 265 F.R.D. 589, 594 (N.D. Fla. 2010) (deeming privilege waived where party failed to follow court orders) *and Universal City*, 230 F.R.D. at 696 (finding waiver where log was produced eight months late and party failed to take precautions to prevent disclosure of privileged documents) *with EEOC v. Safeway Store, Inc.*, No. 00-3155, 2002 U.S. Dist. LEXIS 25200 (N.D. Cal. Sept. 16, 2002) (no waiver found when privilege log was produced six months late, defendant had already given plaintiff notice of the privilege claim, and there was no evidence that the delay prejudiced the plaintiff)

*and Bankers Sec. Ins. Co.*, 889 So. 2d at 95-96 (no waiver found after five-month delay where party seeking waiver was not prejudiced and party claiming waiver gave notice of work-product claim).  It was no secret to Defendant that Plaintiff deemed the documents in question to be privileged, as is evidenced by the fact that Defendant appeared at the initial hearing on the motion to compel with its waiver argument in-hand.  Although the level of specificity of the privilege log (i.e., generally categorizing documents as "Claim Log Notes") is open to question, Plaintiff knew at the time it provided its privilege log that the Court would be reviewing the documents *in camera*.  The Court will not find waiver under these circumstances.

## CONCLUSION

Accordingly, after independently reviewing the withheld documents *in camera*, the Court concludes the documents were properly withheld as privileged, and that Defendant has failed to make an adequate showing that Plaintiff has waived any privileges.

It is therefore ORDERED AND ADJUDGED that the motion to compel [DE# 71] is DENIED.

DONE AND ORDERED in Chambers, at Miami, Florida, this 11th day of July, 2011.

_____
Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of record